Good morning, Your Honors. My name is Karen Daly. I'm with the firm Deckard LLP and we've been appointed by the court as amicus on behalf of Mr. Powell in this matter and also behalf of Mr. Hartman in the matter that you'll hear later on today. I do want to say right now for the court that we are most appreciative that the Deckard firm has undertaken to do this. We couldn't manage if we didn't get, don't time her on this, it's in my time, if we couldn't get amici from some of the law firms, especially those that are difficult cases and we are most appreciative and you'll pass that on from us, please. Thank you, Your Honor. I appreciate that and I will pass it on. Your mention of time reminds me too that I'm reserving five minutes for rebuttal. That's granted. The issue that the court asked us to look into in the Powell case is whether or not the fact that Mr. Powell was adjudicated incompetent in parallel criminal proceedings should have caused the court below to either appoint a guardian or take other appropriate steps under Rule 17 or to appoint counsel for him under Taborn v. Grace. To do what? To appoint counsel for him under Taborn v. Grace. The magistrate judge elected not... This case really raises an important issue, which is what is the obligation of the district court to appoint counsel or at least a guardian ad litem for a litigant who either has been adjudicated incompetent or who seems to be incompetent. Now when somebody has been adjudicated incompetent, that's an easier task, but there are many many prisoners with civil cases who could use counsel. How do you draw the line? Well in this case, this is the easy case, Mr. Powell was adjudicated incompetent and this is the case where both the Fourth Circuit and the Second Circuit have suggested where there's an adjudication of incompetence. It's quote obvious according to the Fourth Circuit that Rule 17 is implicated and some protective measures need to be taken. So in this case, there's no need to engage in difficult line drawing. It's very clear. Mr. Powell was adjudicated incompetent. He remained incompetent for a several month period and during that period of incompetency, the court below in his civil case granted summary judgment against him. Mr. Hartman wasn't adjudicated incompetent. That is correct. Mr. Hartman is the slightly more difficult case, but even there, if the court is drawing lines and I can address this here, I can address it later. The Second Circuit has suggested that Mr. Hartman still falls on the side of the line where the court needs to undertake some sort of inquiry because Mr. Hartman didn't just present as having bizarre behavior. Mr. Hartman didn't just self-identify as having mental difficulties. Mr. Hartman came forward with a letter from his treating psychiatrist that said Mr. Hartman, because of his mental, diagnosed mental problems, can't represent himself and asked his treating psychiatrist, I believe he should be appointed counsel. And that's the sort of, quote, verifiable medical evidence that the Second Circuit has said triggers a duty of inquiry. So in- What do you mean by duty of inquiry? I think what that means is the court needs to take another step and look a little bit further. Again, in Mr. Hartman's case, it's fairly easy to say there was an abuse of discretion because the court simply acknowledged the fact that there was a letter from the treating psychiatrist, but didn't really do anything with it. The court, for example, did not ask the psychiatrist if she would submit an affidavit. The court did not hold an evidentiary hearing to take evidence on this. Is your view that the duty of inquiry requires a competency hearing? I don't believe, no. I think that is not, certainly not required in every case and probably not required in most cases. I think what's required, for example, is to just look a little bit further. It might have required, like I said, for example, a show cause order asking the psychiatrist if she would submit a sworn declaration to provide more details. That might have been an appropriate step to take in this case. A full-blown competency hearing, it might be required in some cases. There's certainly some cases where district courts have looked at bizarre behavior like Mr. Hartman's, bizarre filings, and decided to hold a competency hearing. So the duty of inquiry that Farrelly suggests is a good interim measure that you think we should adopt here? I don't know if it's adopting a Bright Line rule per se. I think it's more so providing some additional guidance to the lower courts that when they have this sort of verifiable medical evidence, that they should take steps as they see fit to verify it. And the trial courts, of course, can decide how to best manage that. Would it be, you suggested that Mr. Hartman's case is a more difficult one than Mr. Powell's. I wonder whether perhaps the reverse is true. As I understand it, Hartman was said by his psychiatrist to be unable to represent himself. In Mr. Powell's case, it was a determination that he wasn't competent to stand trial because the interactions with counsel would not be helpful. But in a way, that's a rather, that might be regarded as a stricter standard than whether Mr. Powell could handle the business of presenting his claim. I think in a couple of responses to that, Your Honor, I think the first thing is that taking a plea is a fairly passive activity as compared to having to adjudicate one's own civil claims. And the fact that Mr. Powell was found by Chief Judge Cain of the Middle District of Pennsylvania to be unable to take a plea because he couldn't understand the consequences of his actions is very persuasive that he lacks the capacity to engage in any sort of litigation, whether civil or criminal. And Chief Judge Cain reached that determination after having Mr. Powell examined by a very well-credentialed psychiatrist who presented the court with a very detailed report explaining why Mr. Powell could not take a plea. This court actually dealt with the converse situation in a case called Arellano v. Kate May County Jail. Judge Slover was on the panel there. And in that case, Mr. Arellano had been found competent to stand trial. And then there was a second report from his treaty medical professional suggesting that he had some additional issues that might impact his capacity to pursue civil litigation. The court below emphasized the fact that Mr. Arellano could take a plea and was competent to stand trial and said, well, if he's competent to stand trial, then we don't believe Taborn is implicated. We believe he has the capacity to litigate. And this court, in its decision, found that that was a reversible error. They believe that the district court placed too much emphasis on the ability to stand trial because that requires less litigation strategy, less activity, less thought by the individual than simply standing trial. So I think the fact that Mr. Powell was found unable to take a plea in a criminal case is very, very persuasive evidence that he was not competent to represent himself, either under Rule 17 and also lacked capacity under Taborn. The other point I would make there is that as a matter of Pennsylvania law, when an individual has been adjudicated incompetent for one purpose, they're considered incompetent for all purposes. So Judge Kane's finding that he could not stand trial would actually basically bar him from pursuing civil action until that finding of incompetency was lifted. And that did not happen while his civil case was pending. So for that reason, the magistrate judge should not have granted summary judgment against him. He should have either appointed counsel under Taborn, appointed a guardian under Rule 17, which in Mr. Powell's case, I think, would have been the most appropriate step to take, but certainly should not have just proceeded to grant summary judgment against this unprotected, unrepresented, incompetent individual. Do you have any idea how many pro se litigants that we have, many of whom, if not most of whom, show some suggestion of incompetency? How can that be managed? You said, well, there was a psychiatrist in one case, and you should have had the psychiatrist put in an affidavit. I'm willing to accept the psychiatrist's statement without an affidavit. I don't know that the affidavit would have made much difference. Should that be done in every case? Well, I mean, how do you distinguish between the frivolous cases and the non-frivolous cases? This is really the balancing task that the court recognized in Taborn, that there are many indigent prisoners who have some mental instability, who nonetheless have meritorious cases and need some counsel. That's the line that Taborn drew. Taborn said, first, see if there's some threshold merit. In both Mr. Powell's case and Mr. Hartman's, there was that threshold merit. Let me stop you right there. You do a threshold merits determination by the court without anybody representing the individual and issue? Isn't there something, doesn't that lead to some concern? Well, I think that's, unfortunately, that's where Taborn had to draw the line to address the resources concern that Your Honor has raised. And that's simply the way the court works. And I will say, notwithstanding the fact that they did not have counsel, Mr. Powell survived a motion to dismiss. Mr. Hartman, in his case, the court conducted an initial merits review of the complaint and found some merit to it, enough to satisfy the Taborn test. Isn't it some concern, though, for a court to do a sua sponte ex parte determination? There's certainly some concern. I think the concern is heightened in a case like this, like Mr. Powell's, where he is incompetent. But that's an easy case because the court has already held that he can't, doesn't have the capacity to do a criminal case. But how come all these hundreds, and there were hundreds of other cases, what has to be done in those cases? Well, I think one distinguishing factor, and this is what the Farrelly Court has mentioned, is that the existence of verifiable medical evidence, that a psychiatrist or psychologist comes forward. But do you have to have a, well, now, where do you get the psychiatrist, and that's going to be a very expensive proposition for the state, isn't it? Oh, I'm not saying that this needs to be done in every case, that the state needs to be done. Well, then, how do you, first of all, how do you draw the line? It's a very difficult line, drawing X and Y. Well, I know, but we have to make a decision. You can say it's difficult, but where do we draw the line so that the district courts know? Well, I will say, in both of these cases, where someone's adjudicated incompetent, that's one side of the line. These are easy cases. I'm asking, if we write an opinion, we have to write an opinion for all the cases. And I'm trying to figure out what rule you would apply, or what standard you would have us apply. Well, again, I'm not asking, Your Honor, for a bright-line rule, but I think in Mr. Harbert's case. Well, I think we have to have a bright-line rule if we write an opinion, and it comes out with the . . . Well, as I understand it, you want to impose some sort of duty or requirement on district courts or magistrate judges acting at the behest of the district court under 17C. And I guess the judge's question is, okay, fine, but if you're going to impose that kind of duty, we've got to give them guidance as to when. Is it when it's as simple as it seemingly is here, although I'm not going to concede that it's simple, when a psychiatrist or a psychologist or some other kind of medical professional has come to a determination that the person is incompetent, or is it when another court, as in the Powell case, has adjudicated someone incompetent, should that be the bright-line rule that we adopt? Does that make sense? I think to answer both your questions, certainly if someone is adjudicated incompetent, that is a bright-line rule. Judge Sloboda's question is the more difficult one. In Mr. Hartman's case, he is not adjudicated incompetent, however, there's some suggestion that he can't represent himself. Well, he has, at least he has a psychiatrist's letter, but go to the other cases, the ones where there's no psychiatrist's letter, there's no affidavit, or anything like that. Somebody says that he's getting wavelengths, waves from Mars, I guess, let's assume that that's... Crazy. Well, I can tell you where other courts have drawn the line, is that simply the fact that someone presents bizarre symptoms, or advances bizarre theories in their legal filings, is not enough. They've asked for something more, that something more under the Second Circuit's formulation is the verifiable medical evidence that Second Circuit exists in Mr. Hartman's case. Whether or not that makes for a workable bright-line rule, or whether or not it simply means the court holds there is an abuse of discretion and remands that particular case, is of course up to the court. Maybe the rule should be that, up to the district court to avoid ex-parting us by appointing the Deckert firm. Well, I can't commit to that in every single case, let alone in these cases. I will say, though, that the Deckert firm does take on these sorts of cases. Other firms take on these sorts of cases, and in fact, the district courts, I know in the Eastern District, and the District of New Jersey, actually have panels of attorneys who can take these sort of cases that present sufficient merit, and where there's sufficient concern about a litigant's capacity. Is that true in the Middle District? In the Middle District, it is true. In fact, in the Middle District, there's a specific local rule that the magistrate judge inexplicably did not follow, which says that if a litigant like Mr. Powell satisfies the Taborn factors, that the court shall conditionally appoint counsel. And the magistrate judge did not make a conditional appointment. Instead, he simply said, even though I believe Taborn is satisfied in Mr. Powell's incompetence, of course, he weighs in favor of appointing counsel. I'm not going to do it because I believe counsel can't be found. So there is a local rule. And didn't even try to find counsel. Didn't even try, and there is a bar panel and other mechanisms in place to assist him in doing that. Okay. Why don't we hear from Ms. Kenyon, and we'll be back to you. Is that all right? That's okay. Yeah, yeah, yeah. All right. Good morning, Your Honors. Please excuse me. I'm unsuccessfully fighting a cold, so I apologize. That's all right. So is Dr. Powell. I will try to speak slowly so that I'm clear. My name is Katie Kenyon on behalf of Dr. Simmons in this case, and I just wanted to extend my thanks to Deckard as well. It was much easier reviewing their brief rather than Mr. Powell's handwritten submissions to the courts. Yeah. I think the court has... Do you represent the state also? I do not. Dr. Simmons was the only defendant in Mr. Powell's case, so there is no one else in this case. Dr. Simmons is a private physician employed by a company who was not named as a defendant who works in the state correctional facilities for the Commonwealth. Have you been in touch with the Commonwealth at all? I would have thought the Commonwealth would come in too. I was not in touch with the Commonwealth in my experience. We're frequently co-defendants on some of the prisoner litigation cases and typically share interests, so perhaps that is why they did not seek to intervene in this matter. Okay. Thank you. I don't necessarily agree with the classification that this is the easy case, but I certainly recognize the court's position that these cases ask one where to draw the line. I think what the court needs to do in this case, in Mr. Powell's case, is put this in a bit of perspective. With the benefit of hindsight, we're not looking as to whether or not Judge McClure and the district court perhaps could have utilized different or better discretion. We're looking as to whether or not they were forced or were compelled to appoint counsel, which I would submit to the court that the district court was not. Looking at this case, there is no arguable merit to Mr. Powell's claims. This is a case of deliberate indifference. It has a heightened standard. If you look at the facts of this case, Mr. Powell was seen by Dr. Simmons 15 times in less than two years. Is that what we should be doing? I think in this case, yes, you should. While you do have the issue with the criminal matter and what happened and the psychiatrist found that Mr. Powell was not able to understand the fact that when he was writing those letters threatening the judiciary that he was committing a federal crime, he just certainly did not understand what he was doing or the ripple effect of those decisions. You need to balance that with what his actual claims were against Dr. Simmons. And those claims were that Dr. Simmons was ignoring his medical conditions and not providing treatment. What should we do when, if I understand the facts correctly here, there is an initial 1915 review or determination by the district court that the case can go that next step. I understand that, obviously, the next step is motion to dismiss, but that next step. And there's information. Whether this is difficult or easy, it doesn't matter. But there was, excuse me, a prior adjudication with regard to his competence. Now, I might agree with you, hypothetically, if it doesn't get past that initial 1915 review because essentially the case would probably be over at that point. But having gotten through that review, doesn't that then present a juncture in time when looking at the issue of competency is important going forward? I'm not going to say it's not important. I think it's definitely a factor to be considered. And I think the district court here, both the magistrate judge and the district judge, did consider that finding. If you look at the timeline in this case, Chief Judge Cain sent Mr. Powell out to be examined while Dr. Simmons' motion for summary judgment was pending. So at that point in time, the district court had the evidence of record, had the extensive medical records for Mr. Powell to review, to determine whether or not there was arguable merit in appointing counsel. Utilizing Rule 17, when the psychiatrist came back with his findings, there was a suggestion that Mr. Powell may not be able to understand what pleading guilty meant. And so Chief Judge Cain sent Mr. Powell for further examination and treatment. All that was ongoing in a parallel universe, for lack of a better word, with the civil matter with Dr. Simmons' motion for summary judgment pending. Mr. Powell sought repeated requests for extension of time. He was granted them. He acknowledged that he's looking for an expert witness. He showed great familiarity with maneuvering the rules and the system. And at the time, Magistrate Judge Smyser issued his report and recommendation to grant the motion for summary judgment. There had been no final determination by the psychiatrist in the criminal case as to what was going to happen with Mr. Powell and his competency to plead guilty. That only happened after the motion for summary judgment was granted. If you look at the actual language in Rule 17 and what its purpose is, it's to prevent injustice. And in this case, Chief Judge, Chief Magistrate, sorry, Magistrate Judge Smyser and Judge McClure both looked at Mr. Powell's competency, both looked at what was happening in the criminal case, reviewed the extensive medical records, the extensive record that had been submitted with Dr. Simmons' motion for summary judgment, and found that there was no way Mr. Powell could ever state a claim of deliberate indifference. Even if counsel or a guardian had been appointed, there was nothing, no discovery that could have been done, nothing that was going to change the outcome of this case. The district court— I tend to agree with you, but isn't there some concern that it's being done with nobody representing the individual involved? I think that was exactly the concern that the magistrate judge and the district judge had in Mr. Powell's case, which is why, when faced with an unopposed motion for summary judgment, they reviewed the case on the merits. I'm sorry to interrupt, but I don't understand something that you said. What you said a few moments ago led me to believe that I was mistaken in the following understanding. My understanding had been that Chief Judge Kain made a determination with regard to Mr. Powell's competence, and then there was a summary judgment determination at a point in time later. When you said they were operating in parallel universes, you led us to believe a few moments ago that Judge Smyser came to his determination prior to Chief Judge Kain's determination. Is that what you meant? It is what I meant, and I can clarify it for you, Your Honor. Chief Judge Kain issued two orders in this case on the criminal matter. One in July 2009, when the psychiatrist's findings were originally submitted. Chief Judge Kain sent Mr. Powell for psychiatric treatment and for further evaluation. She wanted more specific findings from the psychiatrist as to Mr. Powell's capacity. She did allude to him being incompetent in that July 2009 order, but she sent it for further review, further analysis. The ultimate conclusion where he was withdrawing, where his plea was, where his charges finally dismissed did not occur until several months after the motion for summary judgment was granted. Well, in an order, October 23rd of 2009, in the order it says the court finds by preponderance of the evidence that the defendant, Kevin Powell, is presently suffering from a mental disease or defect, rendering him mentally incompetent to understand the nature and consequences of the proceedings now against him. That's a finding. That is. Right? And then in Chief Judge, not Chief Judge, I'm sorry, Magistrate Judge Smyser's order says, the fact that the plaintiff has been found incompetent, of course, weighs in favor of appointing counsel. I mean, that's just a line that I'm reading from the order, but I mean, clearly, he knows at the time of this order, which is March 2010, was, Magistrate. March 2010, thank you, March 22nd of 2010, that there's been an incompetency finding. So I'm not, I'm not getting your point. It was a minor point. The remainder of the August, of the October 2009 order sent Mr. Powell for further examination, further treatment. Chief Judge Cain wanted a more specific determination by the psychiatrist as to Mr. Powell's mental competency to enter the guilty plea. So yes, and I believe as I had originally stated, Chief Judge Cain did state in her order that Mr. Powell was incompetent. However, she also sent him for further testing, for further examination, and those final findings did not come in until after the report and recommendation to grant Dr. Simmons' motion for summary judgment had been granted, and I believe the magistrate judge does point that out in his report and recommendation. This case has parallels with the Hudnall decision out of the Fourth Circuit, wherein the Fourth Circuit found that an adjudication of incompetency certainly would trigger Rule 17, but in language that I think is quite pertinent in this case, stated that even if, even if the plaintiff in the Hudnall case had been found incompetent, the court would only have to exercise an informed discretion or to provide other adequate means of protection for the plaintiff in that case. And my- What would they be? My position on behalf of Dr. Simmons is that the court at two levels, the magistrate judge level and the district judge level, did take Mr. Powell's interest into consideration and did not just blanketly grant an unimposed motion for summary judgment, but rather reviewed the extensive record on this case on the merits and found, presumably given the outcome, that there was no way Mr. Powell was going to be able to state a claim. It's akin to the two-pronged test that the Spruill Court enumerated with regard to the Taborn factors. You don't get to those factors unless or until there's an arguable basis, in fact, in law. Here at no time did Mr. Powell ever have an arguable basis in law. There was never any position that he was going to be able to take with or without counsel, with or without a guardian, that there was more than an extremely thin chance of success in the merits. There wasn't even an extremely thin chance. There was a 0% chance of success in the merits when faced with the complete and comprehensive medical care that Dr. Simmons rendered in this case. I have some hesitation about having the Court of Appeals make a determination as to the possible merits of the case, meaning no disrespect to my colleagues on the panel, I'm not sure that this is the optimal tribunal to be determining initially whether there's a case on the merits. But I have a different question. In Mr. Powell's case, we have a determination by a judge that Mr. Powell is incompetent to stand trial. That fact becomes known to the magistrate judge. But what assurance would we have that that communication would always be made? Suppose there were a determination in another district that, A, Mr. Powell was incompetent to stand trial, without some representation that would be, in a sense, adversary or at least informative for the district judge, it's not at all clear to me that that information would necessarily be communicated. Your Honor, you've raised two points, and the first I'll address briefly. I don't think this Court needs to review on the merits of Dr. Simmons' motion for summary judgment. I think that the standard to be utilized here in appointing counsel and even the utilization or the implementation of Rule 17 is an abuse of discretion. So this Court needs to see whether or not the district court abused its discretion in not appointing a guardian or not appointing counsel, not necessarily reaching the merits. With regard to your second point, this Court sits in an unenviable task given the tremendous amount of pro se prisoner litigation that does exist, certainly can appreciate that. However, I think that there are multi-factors that would be considered. In Mr. Powell's case, if this criminal matter had been taking place in Texas, for example, I would think that the district court would be able to discern from his handwritten submissions that there would be a red flag raised, that there would be an issue. They could look to Mr. Powell's submissions. They could set a hearing. They could look on PACER, add a few clicks of a button and pull up his entire criminal or civil history in any other jurisdiction and gain that knowledge that might be beneficial to the Court in determining whether or not the next step, a competency hearing or due counsel, a guardian even conditionally, would need to take place. So we've been asking about line drawing and I'm confused with your position. Maybe you can help me. So just dealing with 17C for a moment. So what situation would you say that it's appropriate to appoint counsel? Would the litigant have to get past a 1915 determination and establish that there were genuine issues or genuine disputes now as to material facts in order for there to be an appointment? Because, I mean, certainly it can't, it doesn't really make sense for there to be a burden on an incompetent person to create or establish genuine disputes. Well, I think it needs to be case by case. It's going to be very difficult to have a bright line rule, a hard and line test to be utilized. However, there can be... What can we do then? There are factors to be considered and while an incompetent person may not necessarily be able to present issues, genuine issues, material issues that would survive summary judgment, even an incompetent person through their initial claims would be able to prevent, would be able to present a claim that could arguably succeed. We're going to require, I'll just create a profile, a paranoid schizophrenic who thinks that everybody is prepared to kill him to, we're going to require him to establish enough in his papers without the advice of counsel? In some circumstances, yes. And that has to be weighed with, in this case, Dr. Simmons as a professional doctor being sued. Can any professional, can any delusional person off the street file a lawsuit? Technically, yes, because the competency issue does not surface until later. Yet at that point in time, they've already named a professional in a lawsuit and had that professional have to incur a potential state board investigation, fees for defense. There needs to be some type of balance and that balance is looking at the actual merits and it's not just presenting- Without anyone representing the individual, that's what concerns me. But not every individual is going to be able to present a colorful claim and it's not- Well, how do you know unless that individual has someone representing him or her if it's  It's a dilemma. It is a dilemma. It's one that must be balanced and I think that certain cases are going to call for it, but other cases such as Mr. Powell's, there's certainly, there's no reason to waste- Powell is easy, but what about Hartman? I think the same principle applies. I don't think they're all that distinguishable in that regard. You have to balance wasting volunteer attorneys' time and resources to take on these cases with the chance of that case ever having any success on the merits. It's just a chance. It's not having a chance of winning or surviving to summary judgment. It's a likelihood that there is some merit to the claim. And I think the judiciary, both at the district court and certainly at this level, is capable of discerning through a lot of these pro se filings whether or not there is any arguable claim or merit. Well, if a claim gets past the initial 1915 review that the court does, isn't that the juncture at which we should make a determination? Or are you suggesting that it should come later in the process? Well, the district court, the first time they're looking at these cases is on a motion to dismiss typically at the 12B6 stage. And that's where the Arellano case is quite distinguishable because that was a motion to dismiss. There was no record established. The district court didn't have the benefit of looking at anything. In Mr. Powell's case, and it's my understanding Mr. Hartman's as well, these were cases at the motion for summary judgment level. There was a record that had been established. And the court can look through that record in a light most favorable to, in this case, Mr. Powell or Mr. Hartman and see whether or not there is any arguable merit to the claims. And there was none in either case. Okay. Okay. Thank you. Thank you. I should add, too, that you've undertaken sort of the whole responsibility that would ordinarily be the state's. I think only by default because the state was not named and I certainly wasn't going      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Okay, thank you. Is there any question? Go ahead. Yeah. Is there any question in this case on the merits that Dr. Simons wasn't negligent? I mean, it seems to me you said 15, somebody said 15 times shouldn't we just affirm the summary judgment in this case? Well, it was Dr. Simons' counsel who said 15 times. Okay. And what I would say is Mr. Powell's, well, not Mr. Powell's counsel, we're a court-appointed amicus. If I were Mr. Powell's counsel, I might have some answer for you on the merits, but that's not what I was asked to look into. No, I understand that, but still. But here's what I can tell you. I can tell you that Mr. Powell's claims didn't just survive the initial 1915 merits review. They survived a motion to dismiss, notwithstanding his handicaps of being mentally, you know, very, he's mentally incapacity, he's mentally incompetent, very low education, borderline retardation, depends on other prisoners to write his handwritten filings for him. Is that the difference? Nonetheless, that's a motion to dismiss. You can tell by looking at the record. So then what will happen? I mean, what do you envision happening? Suppose we do what you want and reverse and remand. Remand for what? I think in Mr. Powell's case, you remand for the appointment of counsel and or guardian ad litem as the district court sees fit. Well, what is guardian ad litem? It will be somebody who doesn't know the law. So I... But under Rule 17. I know what it says. It does say guardian ad litem. But that's also Rule 17 for children, for minors. Minors or I believe it's, I'm not sure if the language is incompetence or incapacitated persons, but it certainly covers someone like Mr. Powell as well. Yeah, but that's what I don't understand. Or I can understand a guardian for a minor because the rule covers that too. But in a case like this, what would a guardian ad litem do that an attorney couldn't do? In a case like this, I don't see anything the guardian ad litem could do, which is why I think it makes more sense to appoint counsel. And that could be done under Rule 17 as well as in other appropriate order. Where are you going to find enough counsel to do all this? I mean, the magistrate judge said, you know, there won't be counsel. All right. I think the magistrate judge should have at least gone out to try to see if there are counsel because there are good people like you people who might represent him. But, you know, but you people are busy also. How do you get the, maybe there's a law school. The trouble with depending on law schools is that if it comes up in the summer, there's nobody there anymore. We have dealt with these problems before. And, in fact, we actually briefed this case in connection with the University of Pennsylvania. They have an appellate law clinic. So you're correct. That's one resource. This is an unusual case, though, where someone is adjudicated incompetent. There aren't that many people like Mr. Powell out there. Yeah, but what do you do before you get to that point? I mean, how do you, how does a district judge who's busy with a lot of other cases handle this? I mean, I've never been a district judge, but he is and he was. So how do you handle that? There has to be a bright line rule, but what is it? Well, I'm not sure if there has to be a bright line rule, but in this case, where the magistrate judge realized that Mr. Powell was incompetent. Yeah, but this is an easy case. And, in fact, that's why you were appointed. But what about the hundreds of other cases? Well, in the hundreds of other cases, and I'm sure we'll get into this more with Mr. Hartman's argument, I think the touchstone is something more than self-reporting by the individual. There needs to be something that the court sees. And it might be the verifiable evidence from a psychiatrist. It might be that the court on its own looks at the person's findings and says, you know, I'm concerned here. I'm concerned enough to inquire further. But in Mr. Powell's case, as you said, it's the easy case. What about Mr. Hartman? I'm sure we'll be talking about Mr. Hartman quite a bit. But, again, in Mr. Hartman's case, it wasn't just Mr. Hartman saying, I'm incompetent, I'm mentally ill, I need an attorney, which happens, as you've said, in hundreds and hundreds of pro se cases. It was Mr. Hartman presenting filings that were very questionable in their lucidity and grasp on reality. And there was Mr. Hartman's psychiatrist telling the court that she believed he needed an attorney. So the bright line, which both of you have, I think, skillfully dodged, if I may be frank, could possibly be Farrelly's verifiable medical evidence. It very possibly could be. That's what the Second Circuit has found appropriate. Not that we want to follow them, but that's a possible iteration. It is a possible iteration that one other court has adopted. Thank you very much. Thank you very much. Thank you both for arguing this difficult case.